UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JIHAD ALSAIDI and AHLAM ALSAIDI, h/w; MOHAMED ALWAJEH AND MUJAHED Y. ALSAIDI,<br><br>Plaintiffs,<br><br>v.<br><br>CRAIG J. HUBERT; LIVE NATION; WOLFGANG PUCK CATERING AND EVENTS, LLC,<br><br>Defendants. | No. 1:23-cv-01367<br><br>OPINION |

**APPEARANCES**:

Edward P. Capozzi
BRACH EICHLER L.L.C.
101 Eisenhower Parkway
Roseland, NJ 07068-1067

　*On behalf of Plaintiffs*.

Kyle C. Allen
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 E. Swedesford Road, Suite 270
Wayne, PA 19087

　*On behalf of Defendant.*

**O'HEARN, District Judge.**

　　This matter comes before the Court on a Motion to Dismiss Plaintiffs Jihad Alsaidi, Ahlam Alsaidi, Mohamed Alwajeh, and Mujahed Alsaidi's (collectively, "Plaintiffs") Complaint for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Live

Nation Worldwide, Inc. (improperly pled as "Live Nation") ("Defendant" or "Live Nation"). (ECF No. 30). For the reasons that follow, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

On December 9, 2021, Defendant, Craig J. Hubert ("Hubert"), was an invitee lawfully on the premises of The Fillmore Philadelphia ("The Fillmore") in Philadelphia, Pennsylvania. (Compl., ECF No. 21, ¶ 13). The Fillmore is owned and operated by Live Nation, which hosts concerts and events. (Compl., ECF No. 21, ¶¶ 31–32). Live Nation employs and staffs agents, security guards, and ushers for events held at The Fillmore. (Compl., ECF No. 21, ¶ 36). Defendant, Wolfgang Puck Catering and Events, LLC ("Wolfgang Puck"), through mutual agreements, is the holder of a liquor license issued by the Commonwealth of Pennsylvania's Liquor Control Board, permitting the sale of alcoholic beverages at The Fillmore. (Compl., ECF No. 21, ¶ 17). Wolfgang Puck employs the agents, bartenders, and servers for the events at the Fillmore. (Compl., ECF No. 21, ¶ 20).

On December 10, 2021, at 12:16 a.m., Plaintiffs were traveling north on the New Jersey Turnpike when their car was violently rear-ended at the 54.1 milepost in Bordentown, New Jersey, by a car driven by Hubert who was driving under the influence. (Compl., ECF No. 21, ¶¶ 7–9). Plaintiffs' vehicle, driven by Mujahed Alsaidi, overturned, went off the road, struck the guide rail, crossed over the center median separating the two northbound roadways, and struck a second guide rail before coming to a stop. (Compl., ECF No. 21, ¶ 9). The three Plaintiffs in the car sustained serious, permanent injuries and/or paralysis and allege these injuries led to significant medical costs, impairment to their earning capacity, and mental anguish. (Compl., ECF No. 21, ¶ 11).

Plaintiffs allege Wolfgang Puck negligently served and sold Hubert alcoholic beverages while at The Fillmore prior to the accident. (Compl., ECF No. 21, ¶ 21). The sole claim against

Live Nation is that it permitted Hubert to stay on the premises while he was visibly intoxicated, and that doing so was negligent, careless, wanton, willful, and reckless, and caused Plaintiffs' injuries (Count Three) (Compl., ECF No. 21, ¶¶ 37–38).[1]

## II.  PROCEDURAL HISTORY

Plaintiffs initially filed three separate complaints in the Superior Court of New Jersey, Burlington County on March 4 and 17, 2022. (ECF No. 1 at 1). On June 23, 2022, the cases were consolidated. (ECF No. 1 at 1). Plaintiffs filed a First Amended Complaint on January 25, 2023. (ECF No. 1 at 1). Defendant The Filmore timely removed the case to this Court on March 10, 2023, under 28 U.S.C. §§ 1441 and 1446, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1). Plaintiffs filed a Second Amended Complaint on August 4, 2023. (Compl., ECF No. 21). On September 15, 2023, Live Nation filed the present motion. (ECF No. 30). On September 29, 2023, Plaintiffs filed opposition, to which Defendant replied on October 4, 2023. (ECF Nos. 34, 37).

## III.  LEGAL STANDARD

To state a claim, a complaint needs only to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quotations, alterations, and citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's

---

[1] Plaintiffs also allege negligence claims against Defendants Hubert and Wolfgang Puck, which are not the subject of this motion. Plaintiffs dismissed the claims against Defendant The Filmore on August 4, 2023. (ECF No. 21).

elements will not do." *Id.* (citations omitted). Rather, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 547.

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiffs. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On a Federal Rule of Civil Procedure 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

## IV. DISCUSSION

Applying Pennsylvania law, Defendant argues it owed no duty to Plaintiffs and thus Plaintiffs fail to state a claim upon which relief can be granted. (Def. Br., ECF No. 30-2 at 11). Plaintiffs argue there is such a duty, and that the Complaint states a plausible claim for relief. (Pls.

4

Br., ECF No. 34 at 7). The Court concludes that Defendant owed no duty to Plaintiffs under Pennsylvania law, and thus Plaintiffs' Complaint fails to state a claim. Accordingly, the Court grants Defendant's Motion.

### A. Choice of Law

The Court must first address the law that applies to this case. Of course, federal courts sitting in diversity must apply the choice-of-law rules of their forum states. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New Jersey courts apply a two-step "governmental interest analysis." *In re Samsung DLP Television Class Action Litig.*, No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009). New Jersey's choice-of-law rules "turn on whether the laws of the states with interest in the litigation are in conflict." *In re Accutane Litig.*, 194 A.3d 503, 517 (N.J. 2018) (quoting *McCarrell v. Hoffman-La Roche Inc.*, 153 A3d 207, 216 (N.J. 2017)). There is a conflict if there is a distinction between the laws of the two states, and that distinction would be outcome-determinative. *Id.* If there is no conflict then the forum state applies its own laws. *Id.* at 517.

Here, both Plaintiffs and Defendant agree that Pennsylvania law applies because Pennsylvania is where the facts giving rise to this action began. (Pls. Br., ECF No. 34 at 6; Def. Br., ECF No. 30-2 at 8–11). As such, for purposes of this motion, the Court will apply Pennsylvania law.

### B. Negligence

In Pennsylvania, to demonstrate a prima facie case of negligence, "the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 575–76 (Pa. Super. Ct. 2006) (quoting *Phillips*

5

*v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003)). Whether a duty exists is a question of law for the court to decide. *R.W. v. Manzek,* 888 A.2d 740, 746 (Pa. 2005). "[A] duty consists of one party's obligation to conform to a particular standard of care for the protection of another. This concept is rooted in public policy." *Id.*

### C. Duty

Here, the question is whether Live Nation owed a duty to Plaintiffs. (Def. Br., ECF No. 30-2 at 1). Plaintiffs contend Defendant owed a duty of care to (a) train employees regarding identification of intoxicated individuals, (b) train employees to recognize signs of visible intoxication, (c) have a program that would prevent visibly intoxicated persons from operating a motor vehicle, (d) have in place or enforce policies which do not promote or encourage drinking to excess, (e) adequately protect public from the harmful effects of intoxicated individuals leaving the premises, and (f) ensure that patrons receive proper medical care after being served intoxicating beverages on the premises. (Pls. Br., ECF No. 34 at 3). Defendant asserts they owe no such duty to Plaintiffs.

The Court must first determine whether Pennsylvania law already recognizes a duty or obligation as urged by Plaintiffs. "[I]f a common law duty exists under the Restatement (Second) of Torts, the *Althaus* analysis is not necessary.'" *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 661 (E.D. Pa. 2020) (quoting *Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 617 (Pa. Super. Ct. 2017)). If no such duty exists, then the Court must apply the *Althaus*[2] five-factor test to determine whether it should impose a new duty upon Defendant. *Id*.

---

[2] *Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000).

### 1. Pennsylvania Law Does not Recognize a Duty

The Pennsylvania Supreme Court recently affirmed that "an organization which hosted an event at which alcohol was provided, but was not a liquor licensee, could not be held liable for injuries caused by a guest who became intoxicated at the event." *Klar v. Dairy Farmers of Am., Inc.*, 300 A.3d 361, 363–64 (Pa. 2023). Indeed, in *Klar*, which presented facts very similar to those in this case, the Court declined to impose a duty and expand civil liability to a non-licensee of alcohol when an invitee caused a car accident after leaving a venue where he was served alcohol. *Id*. at 364. Plaintiffs fail to persuade the Court that the result in this case should be different.

In *Klar*, the plaintiff asserted Dram Shop Act, 47 Pa. Stat. § 4-493, and common-law negligence claims against the Dairy Farmers of America (DFA), which sponsored a golf outing for its employees and required them to pay a fee to offset the cost of the event. *Id*. at 365. After becoming inebriated at the event, a DFA employee's car struck Klar's motorcycle. *Id*. at 364. The Pennsylvania Supreme Court rejected the imposition of liability on DFA under a common law negligence theory or the Dram Shop Act because it was not a licensee. *Id*. at 381. The Court relied on *Klein v. Raysinger*, 470 A.2d 507 (Pa. 1983), which had "refused to extend common law liability to social hosts." *Klar*, 300 A.3d at 383. To be sure, "*Klein* shut the door to the social host liability through . . . proximate cause" explaining that it is alcohol consumption, not the provision of it, that is the proximate cause.[3] *Klar*, 300 A.3d at 384.

Thereafter, in *Klar*, the Court, after applying the *Althaus* factors, declined to recognize a

---

[3] The Pennsylvania Supreme Court in *Klar* highlighted that *Klein* had analyzed prevailing "common-law negligence claims against non-licensee social hosts" in other jurisdictions before deciding that it is the consumption of alcohol not the supplying of it which is the proximate cause. *Klar*, 300 A.3d at 383. While the Court in the preceding decades had, through "minority opinions and dicta," suggested potential viability of these types of common-law negligence claims, the *Klein* Court made it clear that there was no such liability upon non-licensees. *Id*.

new duty explaining:

> the expansion of potential civil liability to all persons in this Commonwealth who host a gathering involving alcohol would be a policy decision of vast magnitude, the consequences and costs of which would be significant, widespread, and not entirely predictable. Ordinary people do not undertake the legal duties and social obligations of liquor licensees merely by hosting a party, not even if they purchase alcohol together or reimburse each other for it.

*Id.* at 385. As Defendant argues, *Klar* leaves no doubt that Pennsylvania law does not extend liability to non-licensees.

Plaintiffs argue that *Klar* is not controlling because Live Nation specifically hired an entity to provide and serve alcohol and employed individuals for safety and security. (Pls. Br., ECF No. 34 at 11). The Court disagrees. These facts do not change the core analysis and plain rejection by the Pennsylvania Supreme Court of the imposition of a duty upon non-licensees such as Live Nation for injuries caused by an intoxicated guest. And like DFA in *Klar*, Live Nation is a business hosting a gathering where alcohol was made available. Further, like DFA, Live Nation was not the business that served the intoxicated person alcohol; DFA made alcohol available by self-service, and Live Nation retained a duly licensed subcontractor to sell alcohol at its events. *Klar*, 300 A.3d at 365. Under the facts of this case, it could be argued that Live Nation was actually more responsible in that it hired and retained a licensee to serve alcohol as opposed to DFA which made alcohol available via self-service.

In short, Pennsylvania law does not recognize any duty upon a non-licensee.

**2. A special relationship did not exist between Live Nation and Plaintiffs**

As there is no recognized duty under Pennsylvania law for non-licensees to protect third parties from intoxicated guests, the Court next considers whether there was a special relationship between the parties sufficient to warrant imposition of a duty on Defendant. Plaintiffs argue that Live Nation and Hubert had a special relationship because Hubert was an invitee at the event

8

hosted by Live Nation where he was served alcohol and continued to be served while visibly intoxicated. (Pls. Br., ECF No. 34 at 8). Defendant, while acknowledging there was a relationship between Live Nation and Hubert, argues there was no special relationship, or even any direct relationship, between it and Plaintiffs. (Def. Br., ECF No. 30-2 at 18).

"Generally, there is no duty to control the acts of a third party unless the Defendant stands in some special relationship with either the person whose conduct needs to be controlled or . . . with the intended victim of the conduct, which gives the intended victim a right to protection." *Reason v. Katheryn's Korner Thrift Shop*, 169 A.3d 96, 102 (Pa. Super. Ct. 2017) (quoting *Paliometros v. Loyola*, 932 A.2d 128, 133 (Pa. Super. 2007)). While a special relationship does exist between a business and its invitee, *see id.*, it generally does not extend outside of the property owned and/or operated by the business. Further, while a business, like Live Nation, has a duty to an invitee, like Hubert, that duty applies "while they are upon the land for such purposes." Restatement (Second) of Torts, § 344; *see also Newell v. Mont. W., Inc.*, 154 A.3d 819 (Pa. Super. Ct. 2017) (citing *Allen v. Mellinger*, 625 A.2d 1326 (Pa. Cmwlth. 1993) (holding that a Pennsylvania landowner owes no duty to an invitee injured on an adjoining roadway after leaving the premises)). In other words, Live Nation's duty as to Hubert existed only while he was on Live Nation's property, and that duty did not continue after he left the property.

Similarly, a "possessor [of land] is required to exercise reasonable care, for the protection of the public who enter, to supervise the activities of the contractor or concessionaire, including" its operation and methods. Restatement (Second) of Torts, § 344 cmt. C; *see also Miller v. Peter J. Schmitt & Co.*, 592 A.2d 1324, 1328 (Pa. Super. Ct. 1991) (citing *Glass v. Freeman*, 240 A.2d at 829 (Pa. 1968)). Yet, this alone does not create a duty on the landowner to prohibit an intoxicated person from leaving the premises. *See, e.g.*, *State Auto. Mut. Ins. Co. v. Lucchesi*, No. 11-0735,

9

2012 WL 2009355, at *5 (M.D. Pa. June 5, 2012), *aff'd*, 563 F. App'x 186 (3d Cir. 2014) (noting, in an insurance coverage case, under the defendant's theory of the case, "any commercial enterprise—even an enterprise that does not engage in the sale or distribution of alcohol—would have a legal duty, upon seeing an intoxicated person enter, to prevent him from leaving the establishment while intoxicated. The Court can find no support in law for the finding of a duty."). Plaintiffs do not cite any authority stating otherwise. Plaintiffs have, therefore, failed to establish a special relationship between Live Nation and Plaintiffs, or between Live Nation and Hubert that continued after Hubert left the venue, sufficient to establish a duty owed to Plaintiffs.

### 3. Application of Althaus Factors

After determining there is no recognized duty and that the parties were not in a special relationship, the Court must apply the *Althaus* test to determine whether to impose a new duty.

Under *Althaus*, "[t]he determination of whether a duty should exist involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Althaus*, 756 A.2d at 1169.

#### i. First *Althaus* Factor; the relationship between the parties

Regarding the first *Althaus* factor, the Court must look at the relationship between the two parties. Again, Defendant argues there is no relationship between it and Plaintiffs. (Def. Br., ECF No. 30-2 at 12). Defendant contends its relationship to Hubert was limited to the sale of a ticket and his attendance at a concert at a venue it owned. (Def. Br., ECF No. 30-2 at 12). Conversely, Plaintiffs argue Hubert was an invitee[4] of Live Nation, for an event at which Live Nation

---

[4] The Court assumes Plaintiffs' reference to Hubert as a "licensee" to be an error.

10

subcontracted with Wolfgang Puck expressly to sell and serve alcohol. (Pls. Br., ECF No. 34 at 8). After consuming alcohol at the Live Nation event, Hubert left and was involved in a collision. (Pls. Br., ECF No. 34 at 8). Though Plaintiffs were not ticket holders, they argue the collision established the relationship between Plaintiffs and Hubert as a ticket holder at a Live Nation hosted event. (Pls. Br., ECF No. 34 at 8).

Plaintiffs' argument suggests that because a ticketholder (Hubert) was able to purchase alcohol at a venue owned by Live Nation, the venue owner's relationship with the ticketholder transfers or extends to another party—one who is a complete stranger to the venue owner—that thereafter encountered the ticketholder after they left the venue. There is no support for this argument and such an extension of relationship to establish a duty has been rejected by Pennsylvania courts. Indeed, in *Althaus*, the Court held a relationship between the doctor and a minor patient did not create an extended relationship between the doctor and the minor's parents or a duty of care owed to them. *Althaus*, 756 A.2d at 1170. Here, the relationship between Live Nation and Plaintiffs is even more distant. Thus, as to the first *Althaus* factor, there is no direct relationship between Live Nation and Plaintiffs.

### ii. Second *Althaus* Factor; the social utility of the actor's conduct

The Court must next weigh the social utility of the services performed by Live Nation against the negligent conduct. *See Walters v. UPMC Presbyterian Shadyside*, 187 A. 3d 214, 235 (Pa. 2018). Defendant argues there is some social utility of a business such as Live Nation in providing the community with access to arts and entertainment. (Def. Br., ECF No. 30-2 at 12). Defendant further maintains that Plaintiffs do not clearly identify any negligent conduct as it pertains to Live Nation as it did not sell or serve alcohol to Hubert. (Def. Br., ECF No. 30-2 at 12). Plaintiffs identify six specific failures by Live Nation that they claim constitute negligent, careless,

11

wanton, willful, and/or reckless conduct: failure to (a) train employees regarding identification of intoxicated individuals, (b) train employees to recognize signs of visible intoxication, (c) have a program that would prevent visibly intoxicated persons from operating a motor vehicle, (d) have in place or enforce policies discouraging drinking to excess, (e) adequately protect public from the harmful effects of intoxicated individuals leaving the premises, and (f) ensure that patrons receive proper medical care after being served intoxicating beverages. (Pls. Br., ECF No. 34 at 9). Thus, Plaintiffs assert that they have set forth clearly identifiable negligent conduct. (Pls. Br., ECF No. 34 at 9).

The missing connection between Plaintiffs' alleged failures and Live Nation is that Live Nation does not hold a liquor license or employ the servers and bartenders. For this reason, it cannot reasonably be expected to provide or perform any of these acts. *Even if* Live Nation held a liquor license, some of the failures alleged by Plaintiff to support imposing a duty actually *exceed* the duty imposed upon a liquor licensee under Pennsylvania's Dram Shop Act. *See* 47 Pa. Stat. § 4-493 and 47 Pa. Stat. § 4-497. Moreover, Plaintiffs do not cite any instance in which a Pennsylvania court has held that a licensee, let alone non-licensee, has a duty to *prohibit* an intoxicated person from leaving the premises. *See Druffner v. O'Neill*, No. 10-04298, 2011 WL 1103647, at *5 (E.D. Pa. Mar. 23, 2011) (concluding no duty exists regarding the duty of an alcohol licensee to prevent an intoxicated person from driving after reviewing out-of-state caselaw).[5] It is simply not reasonable to impose such a duty upon an entity that does not hold a liquor license when it is not imposed upon one that holds a license. And this Court need not predict such a result under Pennsylvania law since the Pennsylvania Supreme Court's decision in *Klar* already decided

---

[5] Defendant cites several cases from other jurisdictions that hold an alcohol licensee or tavern owner has no duty to prevent an intoxicated person from driving. (Def. Br., ECF No. 30-2 at 14–15).

12

the issue. *See Klar*, 300 at 384. Thus, this factor does not support an imposition of a duty on Live Nation to Plaintiffs.

        **iii.**        **Third *Althaus* Factor; the nature of the risk imposed and foreseeability of the harm incurred**

The Court next considers the nature of the risk imposed and the foreseeability of harm incurred. "[D]uty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." *R.W.*, 888 A.2d at 747. Defendant argues there is a low risk that a concert attendee will injure himself or a third party in an accident following a concert. (Def. Br., ECF No. 30-2 at 13). Defendant further asserts that since it is the liquor licensee who undertakes the responsibility for risks posed by alcohol under the Pennsylvania Dram Shop Act it is not appropriate to consider the risk posed by selling or serving alcohol when determining whether a duty should be imposed upon it. (Def. Br., ECF No. 30-2 at 13). Plaintiffs argue that it is appropriate to consider these risks because Defendant was the host of the event, provided security, and contracted to sell and serve alcoholic beverages. (Pls. Br., ECF No. 34 at 10). Plaintiffs argue that this should trigger a duty to monitor whether attendees are under the influence of alcohol and "creates a genuine issue of material fact sufficient for Plaintiffs' claims to proceed and to at least allow the parties to take discovery as to the issue." (Pls. Br., ECF No. 34 at 10). This is not a question of fact but a pure question of law, and nothing in Pennsylvania law supports a finding that a non-licensee's duty extends that far. This factor does not weigh in favor of recognizing a duty.

        **iv.**        **Fourth *Althaus* Factor; the consequences of imposing a duty upon the actor**

In assessing the consequences of imposing a duty upon a venue, Defendant argues that Plaintiffs are proposing or extending the obligations of liquor licensees to non-licensees. (Def.

13

Br., ECF No. 30-2 at 14). Defendant emphasizes that while the Dram Shop Act prohibits the service of alcohol to visibly intoxicated person by licensees, there is no duty upon licensees to stop them from driving, and such an expansion of duty would create endless potential for liability. (Def. Br., ECF No. 30-2 at 15). Plaintiffs argue that as a host Live Nation is already responsible for hosting and monitoring the patrons of the event such that it would not impose a sweeping duty on "every small and large commercial establishment" since few establishments contract with another party to serve alcohol and provide security. (Pls. Br., ECF No. 34 at 10).

Here, Plaintiffs' argument would undoubtedly extend the duty of non-licensees contrary to existing Pennsylvania law. *Klein,* 470 A.2d at 511. And *Klar* explained, "the expansion of potential civil liability to all persons in this Commonwealth who host a gathering involving alcohol would be a policy decision of vast magnitude, the consequences and costs of which would be significant, widespread, and not entirely predictable." *Klar*, 300 A.3d at 385.

As noted above in the context of the second factor, if accepted, Plaintiffs' argument would extend the duty of licensees beyond the Dram Shop Act's current imposition of liability upon a licensee. *Juszczyszyn v. Taiwo*, 113 A.3d 853, 858 (Pa. Super. 2015); *see also* 47 Pa. Stat. § 4-493 and 47 Pa. Stat. § 4-497. As such, this factor does not weigh in favor of recognizing a new duty.

    v.  **Fifth *Althaus* Factor; the overall public interest in the proposed solution**

The Court finally considers the overall public interest. Defendant argues there is no public interest in imposing a duty of care on venues that allow ticketholders to attend concerts and experience art and culture. (Def. Br., ECF No. 30-2 at 17). Plaintiffs argue that Defendant ignores the broader public interest. (Pls. Br., ECF No. 34 at 10-11). Even if there is a public interest as Plaintiffs maintain, this factor alone is not sufficient to trigger a duty particularly when the state's

14

Supreme Court has rejected imposing such a duty on a non-licensee. *See Klar*, 300 A.3d at 384–85.

In sum, after considering the *Althaus* factors, the Court finds no reason to establish a new duty.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. (ECF No. 30). An appropriate Order accompanies this Opinion.

                                                                                    _____
                                                                                    **CHRISTINE P. O'HEARN**
                                                                                    **United States District Judge**