**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JIHAD ALSAIDI,** *et al.*, <br><br> *Plaintiffs*, <br><br>  v. <br><br> **WOLFGANG PUCK CATERING AND EVENTS, LLC**, <br><br> *Defendant*. | No. 23-cv-01367 <br><br> **OPINION** |

<u>**APPEARANCES:**</u>

**Edward P. Capozzi**
BRACH EICHLER LLC
101 Eisenhower Pkwy
Roseland, NJ 07068

**Joseph Anthony Chang**
ALSAIDI CHANG HAMDAN LLC
1089 Main Street, Suite 502
Paterson, NJ 07503

    *On behalf of Plaintiffs.*

**Erin L. Leffler**
**Frantz J. Duncan**
**Gabrielle Kelerchian**
**Melissa Ann Ruth**
SHOOK HARDY & BACON LLP
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

**THIS MATTER** comes before the Court on Defendant Wolfgang Puck Catering and Events, LLC's ("Defendant" or "Wolfgang Puck") Motion to Determine Choice of Law regarding whether New Jersey law applies such that Plaintiff Jihad Alsaidi's ("Plaintiff" or "Alsaidi") failure to wear a seat belt is admissible for purposes of comparative negligence. (ECF No. 127). For the reasons that follow, Defendant's Motion is **GRANTED**.

I.     **BACKGROUND**

As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the factual background of this matter in two earlier Opinions, (ECF Nos. 91, 99), the Court will only state those facts necessary to decide the instant Motion.

On December 9, 2021, Craig J. Hubert ("Hubert") was an invitee lawfully on the premises of the Fillmore Philadelphia ("Fillmore Venue") in Philadelphia, Pennsylvania. (Am. Compl., ECF No. 21 at ¶ 13).[1] Hubert is a New Jersey resident. (*Id.* at ¶ 3). Defendant Wolfgang Puck was the holder of a liquor license issued by the Commonwealth of Pennsylvania's Liquor Control Board, permitting the sale of alcoholic beverages at the Fillmore Venue. (*Id.* at ¶ 17). Wolfgang Puck employs agents, bartenders, and servers for the events at the Fillmore Venue. (*Id.* at ¶ 20). Wolfgang Puck is a Delaware limited liability company, conducts business in a number of states, including Pennsylvania and New Jersey, and has a principal place of business in California. (Am. Compl., ECF No. 21 at ¶ 5; Def.'s Mot., ECF No. 127-1 at 7–8 (citations omitted)). As a limited liability company, Wolfgang Puck has one member, Compass Group USA, Inc., headquartered in North Carolina. (Def.'s Reply, ECF No. 131 at 6).

---

[1]     Unless otherwise stated, the facts cited herein are based upon the allegations of the Amended Complaint and are not in dispute.

On December 10, 2021, at 12:16 a.m., Plaintiffs Jihad Alsaidi, Mohamed Alwajeh, and Mujahed Alsaidi were traveling north on the New Jersey Turnpike when their car was rear-ended at the 54.1 milepost in Bordentown, New Jersey, by a car driven by Hubert who was driving under the influence of alcohol. (Am. Compl., ECF No. 21 at ¶¶ 7–9). All three Plaintiffs are New York residents and were traveling home to New York at the time of the accident. (Am. Compl., ECF No. 21 at ¶ 2; Pls.' Opp., ECF No. 130 at 7). Plaintiffs' vehicle, driven by Mujahed Alsaidi, overturned, went off the road, struck the guide rail, crossed over the center median separating the two northbound roadways, and struck a second guide rail before coming to a stop. (Am. Compl., ECF No. 21 at ¶ 9; Ex. C, ECF No. 127-4 at 3). At the time of the collision, Mohamed Alwajeh was a passenger seated in the right front seat, and Jihad Alsaidi was a passenger seated in the left rear seat. (Ex. C, ECF No. 127-4 at 3). The three Plaintiffs sustained serious, permanent injuries and/or paralysis and allege these injuries caused significant medical costs, impairment to their earning capacity, and mental anguish. (Am. Compl., ECF No. 21 at ¶ 11). Jihad Alsaidi was not wearing a seat belt at the time of the collision, in violation of N.J. Motor Vehicle Statute 39:3-76.2f(c). (Ex. C, ECF No. 127-4 at 3). Alsaidi was ejected from the vehicle, leaving him paralyzed from the waist down. (Def.'s Mot., ECF No. 127-1 at 4; Ex. B., ECF No. 127-3 at 3).

Plaintiffs allege Wolfgang Puck negligently served and sold Hubert alcoholic beverages while at the Fillmore Venue prior to the accident in violation of the Pennsylvania Dram Shop Act. (Am. Compl., ECF No. 21 at ¶¶ 21–23). *See also* 47 P.S. § 4-493(1).

II.     **PROCEDURAL HISTORY**

Plaintiffs initially filed three separate complaints in the Superior Court of New Jersey, Burlington County on March 4 and 17, 2022. (ECF No. 1-3 at 8). At that time, Wolfgang Puck was not named as a party to the lawsuit. (*Id.*). On June 23, 2022, the cases were consolidated. (*Id.*).

Plaintiffs filed a First Amended Complaint on January 25, 2023. (*Id.*). Defendant The Fillmore Philadelphia timely removed the case to this Court on March 10, 2023, under 28 U.S.C. §§ 1441 and 1446, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1 at 1). Plaintiffs filed a Second Amended Complaint on August 4, 2023, naming Wolfgang Puck as a defendant. (ECF No. 21). Live Nation filed a Motion to Dismiss on September 15, 2023, which was granted on April 26, 2024. (ECF Nos. 30, 92). Defendant Hubert filed a Motion to Dismiss the Cross-claims against him on February 2, 2024, which was granted on September 13, 2024. (ECF Nos. 72, 99). Hubert was then dismissed from the action on May 13, 2025, after a settlement was reached. (ECF No. 128). Presently, Wolfgang Puck is the only remaining defendant.

On May 6, 2025, Wolfgang Puck moved to determine the choice-of-law regarding whether New Jersey law applies such that Plaintiff Jihad Alsaidi's failure to wear a seat belt is admissible for purposes of comparative negligence. (ECF No. 127-1 at 1). Plaintiff filed Opposition on May 19, 2025, arguing that Pennsylvania law should be applied, which would preclude admission of seat belt evidence. (ECF No. 130 at 3). Wolfgang Puck filed a Reply on May 27, 2025. (ECF No. 131).

## III.    LEGAL STANDARD

When a choice-of-law question exists in an action where the Court's jurisdiction is based upon diversity of citizenship, "a district court must apply the choice-of-law rules of the state in which it sits in order to determine which state's law applies." *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). New Jersey follows the Second Restatement's most significant relationship test for tort claims. *See P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008).

Choice-of-law determinations occur "on an issue-by-issue basis," *Id.* at 460, and the principle of depecage "allows New Jersey courts to apply different state laws to different issues in a case." *Freedom Mortg. Corp. v. LoanCare, LLC*, No. 16-02569, 2023 WL 4366288, at *2 (D.N.J. July 6, 2023) (citing *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 447 (D.N.J. 1998)); *see also Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as depecage.") (citations and quotations omitted).

New Jersey's choice-of-law rules turn on "whether the laws of the states with interests in the litigation are in conflict." *In re Accutane Litig.*, 194 A.3d 503, 517 (N.J. 2018) (citing *McCarrell v. Hoffmann-La Roche Inc.*, 153 A.3d 207, 216 (N.J. 2017)). There is a conflict if there is a distinction between the laws of the two jurisdictions, and that distinction would be outcome-determinative. *Id.* (citations omitted). If there is no conflict, then the forum state applies its own laws. *Id.* (citations omitted).

Upon finding an actual conflict, the Court must determine which jurisdiction has the "most significant relationship to the claim." *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 207 (3d Cir. 2013) (citing *Camp Jaycee*, 962 A.2d at 461) (quotations omitted). For cases involving personal injury, there is a "presumption that the law of the state where the injury occurred applies." *In re Accutane Litig.*, 194 A.3d at 520–21 (citing *Camp Jaycee*, 962 A.2d at 455). This presumption can be rebutted if, after assessing each state's contacts under Restatement (Second) of Conflict of Laws §§ 145 and 6, another state is found to have a "more significant relationship with the parties and the occurrence." *Id.* (citing *McCarrell*, 153 A.3d at 219).

IV.    **DISCUSSION**

Pursuant to New Jersey's choice-of-law analysis, the Court first must consider whether a conflict exists between New Jersey and Pennsylvania law as to the admissibility of a plaintiff's non-use of a seat belt. New Jersey admits evidence of the failure to wear a seat belt for purposes of comparative negligence, whereas Pennsylvania does not. *Compare Waterson v. Gen. Motors Corp.*, 544 A.2d 357, 372–73 (N.J. 1988) *with* 75 Pa. C.S.A. § 4581(e). Accordingly, if Plaintiff Jihad Alsaidi prevails on his dram shop claim against Wolfgang Puck, his recovery could nevertheless be limited by the seat belt defense if New Jersey law applies and a jury were to find him comparatively negligent.[2] Therefore, there is an actual outcome-determinative conflict. *See Freedom Mortg. Corp.*, 2023 WL 4366288, at *2 (recognizing an outcome-determinative conflict where New Jersey and Virginia's punitive damages laws conflict). Since there is an actual conflict, the Court next looks to which state has the most significant relationship to the issue.

A.    **Restatement § 145 Factors Weigh in Favor of Applying New Jersey Law**

To determine which state has the most significant relationship to a particular issue in a tort action, courts typically weigh the following factors: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, is centered." Restatement (Second) of Conflict of Laws § 145(2)(a)–(d). As noted above, the first factor—where the injury occurred—is the most important, and there is a "presumption

---

[2] As explained in Section III, *supra*, New Jersey courts may apply "different state laws to determine tort liability, compensatory damages, and punitive damages in the same case." *Freedom Mortg. Corp.*, 2023 WL 4366288, at *6 (citations omitted). Therefore, if New Jersey is found to have a greater interest in the application of the seat belt defense than Pennsylvania, New Jersey's law will be applied, despite Pennsylvania law applying to determine liability as to Plaintiffs' dram shop claim. *See id.* (finding New Jersey had a greater interest in determining punitive damages though Virginia had an interest in applying its tort law on liability).

that the law of the state where the injury occurred applies." *In re Accutane Litig.*, 194 A.3d at 520–21 (citation omitted). However, this presumption may be overcome if another state has a more significant relationship. *Id.* (citation omitted). Additionally, contacts are assessed qualitatively, so while the quantity of contacts may be persuasive, it is not the sole factor. *Camp Jaycee*, 962 A.2d at 460. As set forth in more detail below, the Court finds that, because the accident took place in New Jersey, there is a presumption that its law applies, and Defendant has failed to rebut that presumption.

        i.        The Place Where the Injury Occurred

Starting with the first factor, the injury occurred in New Jersey and, in a personal injury case, the place of injury typically "plays an important role in the selection of the state of the applicable law." *Fu v. Fu*, 733 A.2d 1133, 1142 (N.J. 1999) (quoting Restatement, *supra*, § 145 cmt. e). Plaintiffs argue the place of injury is "fortuitous," because Plaintiffs were not New Jersey residents, were only traveling through New Jersey at the time of the accident, and the only remaining claims are those under the Pennsylvania Dram Shop Act against Wolfgang Puck. (Pls.' Opp., ECF No. 130 at 3, 7–8). But an accident site is "fortuitous only when the driver did not intend or could not reasonably have anticipated being in that jurisdiction at the time of the accident." *Malik v. Cooper Tire and Rubber Co.*, 59 F. Supp. 3d 686, 693 (D.N.J. 2014) (the place where the injury occurred is considered "fortuitous" when "it bears little relation to the occurrence and the parties with respect to the particular issue.") (citations omitted). Therefore, when a party "voluntarily and intentionally" travels to another state, the location of an injury incurred there is "not fortuitous." *Blakesley v. Wolford*, 789 F.2d 236, 243 (3d Cir. 1986). And here, it is undisputed that Plaintiffs knowingly and voluntarily traveled into New Jersey, were driving on its highways when the accident occurred, and received medical treatment there. *See Malik*, 59 F. Supp. 3d at

693–94 (finding a location where Plaintiff "intended to be" and "travel on[to]" "was not fortuitous simply because the tire could have blown out somewhere else."); *see also Blakesley*, 789 F.2d at 241 (finding the district court erred in giving "double weight" to Plaintiffs domicile "by looking to the place where the injuries are felt, rather than the place where they in fact occurred…"). These contacts are sufficient to establish that the place where the injury occurred is not fortuitous in this case and thus, this factor creates a presumption in favor of the application of New Jersey law.

   ii.  The Place Where the Conduct Causing the Injury Occurred

Turning to the second factor, the Court also finds that New Jersey is the place where the conduct causing the injury occurred. "[W]hen both conduct and injury occur in a single jurisdiction, with only rare exceptions, the local law of the state where conduct and injury occurred will be applied." *Camp Jaycee,* 962 A.2d at 462 (quoting *Fu*, 733 A.2d at 1142 (citations and quotations omitted)). This is because "a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there." *Id.*

Plaintiffs argue that the conduct causing the injury was Wolfgang Puck's overservice of alcohol in Pennsylvania. (Pls.' Opp., ECF No. 130 at 3). However, Plaintiffs overlook the fact that the Court determines choice-of-law on an issue-by-issue basis, *Camp Jaycee*, 962 A.2d at 460, and the conduct most directly related to the seat belt issue occurred in New Jersey, as that is where Defendant Hubert struck Plaintiffs' vehicle causing Plaintiff Jihad Alsaidi to be ejected from the vehicle. Thus, this factor favors application of New Jersey law.

   iii.  The Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties

In assessing the third factor, the Court finds that this factor is largely neutral. At the time of this Motion, the only remaining parties are Plaintiffs and Wolfgang Puck. (Pls.' Opp., ECF No. 130 at 8). Plaintiffs are domiciled in New York, (Am. Compl., ECF No. 21 at ¶ 2), and Wolfgang

Puck is a Delaware limited liability company that conducts business in Pennsylvania and New Jersey, and has a principal place of business in California. (Am. Compl., ECF No. 21 at ¶ 5; Def.'s Mot., ECF No. 127-1 at 7–8 (citations omitted)). As a limited liability company, Wolfgang Puck has one member, Compass Group USA, Inc., headquartered in North Carolina.[3] (ECF No. 131 at 6).

Plaintiffs argue that since Defendant "was in the scope of conducting… business utilizing its Pennsylvania Liquor License when its employees and/or agents allegedly overserved Hubert," and since Plaintiffs are not New Jersey residents, this factor weighs heavily in favor of application of Pennsylvania law. (Pls.' Opp., ECF No. 130 at 8). However, as no remaining party resides in either New Jersey or Pennsylvania, this factor is largely neutral. Even if the Court were to find that Defendant doing business in Pennsylvania was enough to favor application of Pennsylvania law, it is still inadequate standing alone to rebut the presumption in favor of application of New Jersey law to assess comparative fault for failure to wear a seat belt where the accident occurred in New Jersey and the underlying primary tortfeasor (Hubert) was a New Jersey resident and insured in New Jersey. (Am. Compl., ECF No. 21 at ¶ 3).

iv.    The Place Where the Relationship, if Any, is Centered

Finally, the Court finds that Plaintiffs and Defendant are connected via the accident that took place in New Jersey. While Plaintiffs argue the center of the relationship between the parties arises from Wolfgang Puck's service of alcohol to Hubert in Pennsylvania, (Pls.' Opp. ECF No. 130 at 8–9), contacts, like the service of alcohol, not specifically related to the issue of the seat belt usage are less relevant in the overall analysis. *See Malik*, 59 F. Supp. 3d at 691 ("These

---

[3] "The citizenship of an LLC is determined by the citizenship of each of its members." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010).

contacts are to be evaluated according to their relative importance with respect to the particular issue.") (citations omitted). Wolfgang Puck's only connection to Plaintiffs is through Hubert, who Wolfgang Puck served alcohol to in Pennsylvania, and who hours later collided with Plaintiffs in New Jersey. (Def.'s Mot., ECF No. 127-1 at 8). While Hubert was dismissed from this action, that does not negate that he is the only connection between the current parties, and that the collision is at the center of the parties' relationship regarding the law that should govern the seat belt issue. Accordingly, this factor also weighs in favor of application of New Jersey law. Overall, Pennsylvania's contacts do not outweigh those contacts with New Jersey and are not enough to rebut the presumption that New Jersey has the most significant relationship to the issue and thus New Jersey law should apply.

### B.    Restatement § 6 Principles Weigh in Favor of Applying New Jersey Law

Having determined under § 145 that New Jersey has the most significant relationship to the seat belt issue, the Court next considers the principles of § 6 of the Restatement, which support the same conclusion. *See Camp Jaycee*, 962 A.2d at 455.

Under § 6, courts consider a number of principles including: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *See* Restatement (Second) of Conflict of Laws § 6(2)(a)–(g) (1971). At their "essence" the principles are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee*, 962 A.2d at 463 (quoting *Erny v. Estate of Merola*, 792 A.2d 1208, 1217 (N.J. 2002) (citations and quotations

omitted)). The competing interests of the states are considered the "most important of those factors." *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007) (citing *Fu*, 733 A.2d at 1141).

Although Plaintiffs' Opposition recites these principles, it does not meaningfully engage with them as applied to the specific facts of this case. (Pls.' Opp., ECF No. 130 at 5). Defendant, by contrast, undertakes a partial analysis, focusing on the interests of interstate comity, the competing interests of the states, and the interests of judicial administration. (Def.'s Mot., ECF No. 127-1 at 8–9). Because neither party conducts a complete analysis of these considerations, the Court undertakes that analysis below and concludes that these factors also weigh in favor of New Jersey law.

      i.      The Interests of Interstate Comity and the Competing Interests of the States

When evaluating the "interests of interstate comity" and "the competing interests of the states," the Court considers "whether application of a competing state's law would frustrate the policies of other interested states." *Fu*, 733 A.2d at 1141 (citing Restatement, *supra*, § 145(1) cmt. b). Defendant argues that New Jersey "has a strong interest in applying its law to collisions and injuries that occur on its roads, particularly those caused by New Jersey residents." (Def.'s Mot., ECF No. 127-1 at 8). While Plaintiffs argue that Pennsylvania "has an interest in licensing and monitoring its establishments that serve alcohol to alleged intoxicated individuals who operate motor vehicles immediately after leaving an establishment," (Pls.' Opp., ECF No. 130 at 9–10), Plaintiffs ignore the principle of depecage, and the specific focus on the issue of the seat belt defense here. Pennsylvania's interest with respect to the Pennsylvania Dram Shop Act is honored through application of the liability standard of the Act. In contrast, the seat belt issue concerns the apportionment of fault and, potentially, reduction of damages based thereon.

New Jersey's interests include regulating conduct on its roads through its mandatory seat belt law and associated comparative negligence regime. *See* N.J. STAT. ANN. § 39:3-76.2f(c) (requiring "rear seat passengers 18 years of age or older" to "wear a properly adjusted and fastened safety seat belt system."); *see also Waterson*, 544 A.2d at 358 ("[I]f a jury finds that a plaintiff's failure to wear a seat belt constitutes negligence that contributed to Plaintiff's injuries and damages, that negligence shall be considered in determining Plaintiff's award."). "New Jersey has a very significant public policy promoting the use of seat belts which would militate toward admitting evidence that [a plaintiff] was not wearing a seat belt on the issue of the extent or severity of injuries…" *Malik*, 59 F. Supp. 3d at 696 (quoting *Waterson*, 544 A.2d at 357). The New Jersey Supreme Court has taken judicial notice of the "effectiveness of seat belts in reducing death and injury from automobile accidents." *Waterson*, 544 A.2d at 373. These conduct-regulating interests apply to accidents on New Jersey roads regardless of the parties' domicile. *See Camp Jaycee*, 962 A.2d at 466 (finding state "where tort-feasors repeatedly perform their tasks" has interest "regardless of the home state" of the parties); *see also Mellk v. Sarahson*, 229 A.2d 625, 626–28 (N.J. 1967) (finding state "has a real interest in having its rules of the road apply to the conduct of the parties in the operation of a motor vehicle on the highways of that state.")

Pennsylvania has an interest in protecting plaintiffs from being found comparatively negligent and thus obtaining lesser recoveries based on lack of seat belt usage, however this interest is comparatively weaker. In Pennsylvania seat belt use cannot "be considered as contributory negligence" and such evidence is not admissible "as evidence in the trial of any civil action." 75 Pa. C.S.A. § 4581(e). This prevents Pennsylvania juries from reducing a plaintiff's recovery based on seat belt evidence. However, applying New Jersey law in this case as to Jihad Alsaidi's

comparative negligence does not frustrate Pennsylvania's interest related to dram shop liability. Indeed, Pennsylvania allows comparative negligence in dram shop actions on other grounds.[4]

Finally, both Pennsylvania and New Jersey's interests are relatively weakened by the fact that the current parties are not domiciled in or residents of either state. However, New Jersey's interest in protecting motorists on its roads is greater than Pennsylvania's interest in increasing a non-resident's potentially reduced recovery arising from an out of state accident.

   ii.   <u>The Interests of the Parties</u>

In examining the interests of the parties, the Court looks to "the parties' justified expectations." *Fu*, 733 A.2d at 1141. This principle "ordinarily plays little or no part in a choice-of-law question in the field of torts." *Id.* And it has no impact on the Court's analysis here.

   iii.   <u>The Interests Underlying the Field of Tort Law</u>

Next, when evaluating the interests underlying the field of tort law, the Court measures "the degree to which deterrence and compensation… would be furthered by the application of a state's local law." *Id.* (citing Restatement, *supra,* §145(1) cmt. b) Though it is also "necessary to evaluate on a case-by-case basis the relative weight of those underlying purposes with respect to a specific rule." *Id.* (citations omitted).

---

[4]   Generally, Pennsylvania applies a comparative negligence framework where "any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff." 42 PA. STAT. AND CONS. STAT. ANN. § 7102(a). Pennsylvania courts have allowed comparative negligence in Pennsylvania Dram Shop Act cases. *See Matthews v. Konieczny*, 527 A.2d 508, 512 (Pa. 1987) (finding Dram Shop Act liability "is not absolute and/or irrebuttable" and defendants "can, where applicable, attempt to establish the comparative negligence of the actor(s) involved.") (citations omitted). Specifically, the Pennsylvania Dram Shop Act allows contributory negligence of intoxicated patrons as a defense. *See Miller v. Brass Rail Tavern, Inc.*, 703 A.2d 1072, 1081 (Pa. Super. 1997). Pennsylvania has also applied comparative negligence to apportion fault between the driver, passenger, and club which served alcohol. *See Terwilliger v. Kitchen*, 781 A.2d 1201, 1209 (Pa. Super. 2001). Thus, applying New Jersey law here to allocate fault based upon failure to wear a seat belt does not frustrate or interfere with Pennsylvania's interests with regards to its Dram Shop Act.

Here, applying New Jersey law regarding seat belt use promotes the state's attempt to regulate safety on its roadways and deter certain conduct. *See* N.J. STAT. ANN. § 39:3-76.2f(c). Indeed, grounded in "fairness and public policy, as expressed in this State's mandatory seat belt law," there is a focus on "avoidance of injury." *Waterson*, 544 A.2d at 358. In contrast, Pennsylvania favors fully protecting injured persons by not allowing seat belt evidence. *See* 75 Pa. C.S.A. § 4581(e). However, this carries less weight since Plaintiffs are not residents of Pennsylvania. Moreover, applying New Jersey's seat belt rule here would not frustrate Pennsylvania's policies, since Pennsylvania's interest has already been met by applying Pennsylvania's Dram Shop Act, and following depecage, this is a separate issue.

  iv.  The Interests of Judicial Administration

Finally, when considering the interests of judicial administration, the Court looks to "practicality and ease of application, factors that in turn further the values of uniformity and predictability." *Freedom Mortg. Corp.*, 2023 WL 4366288, at *6 (quoting *Camp Jaycee*, 962 A.2d at 467).

Defendant argues that "judicial administration interests are also promoted when New Jersey courts apply New Jersey law rather than a foreign state's law." (Def.'s Mot., ECF No. 127-1 at 8). The Court recognizes that separating the applicable law as to liability under the Dram Shop Act and comparative negligence may theoretically affect the ease of application and practicality to the case, but any such impact would be minimal and easily managed with appropriate jury instructions. Further, following depecage, the Court considers the issues of liability and assessment of comparative fault separately. Even if the Court were to find that this factor leans in favor of the application of Pennsylvania law, given that almost every other contact and principle favors

14

application of New Jersey law, the interests of judicial administration are not sufficient to overcome the presumption of applying New Jersey law.

In sum, considering the relevant Restatement factors required by New Jersey's choice-of-law rules, the Court finds New Jersey has the most significant relationship to the seat belt issue and thus, New Jersey law should be applied.

## V.    CONCLUSION

For the reasons expressed above, it is ordered that Defendant's Motion to Determine Choice of Law is **GRANTED**. (ECF No. 127). It is further **ORDERED** that New Jersey law shall govern the admissibility of Plaintiff Jihad Alsaidi's failure to wear a seat belt for purposes of comparative negligence. An appropriate Order accompanies this Opinion.

**SO ORDERED**.

**CHRISTINE P. O'HEARN**
**UNITED STATES DISTRICT JUDGE**